UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KAYLA JOHNSON ET AL** | **:** | **CASE NO. 2:20-CV-00249** |
| **VERSUS** | **:** | **JUDGE JAMES D. CAIN, JR.** |
| **KRISTOPHER PRUETT ET AL** | **:** | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Joint Motion for Summary Judgment filed by defendants Sheriff Ricky Moses, Deputy Daniel Rick, Officer Kristopher Pruett, Officer Gene Clark, and the City of DeRidder. Doc. 82. The motion is opposed by plaintiffs [doc. 103], and movants have filed a reply, making the matter ripe for resolution. Doc. 99. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

After careful consideration of this motion, the responses and replies thereto, the evidence submitted by the parties, and the applicable law, for the reasons that follow, **IT IS RECOMMENDED** that the motion be **GRANTED** and that plaintiffs' federal claims alleging constitutional and civil rights violations pursuant to 42 U.S.C. § 1983 be dismissed with prejudice.

It is **FURTHER RECOMMENDED** that plaintiffs' remaining state law claims be dismissed without prejudice for want of jurisdiction.

# I.
## BACKGROUND AND FACTS

This matter arises from the fatal shooting of Gary Clark on February 27, 2019, by officers of the Beauregard Parish Sheriff's office and the DeRidder City Police Department. Doc. 50, p. 4-7. Plaintiff Hank Clark, who witnessed the shooting, is decedent Gary Clark's brother. *Id.*, p. 2, ¶3. Plaintiff Kayla Johnson is the mother of Gary Clark's two minor children and appears on their behalf.[1] *Id.* The officers involved in the shooting were Deputy Daniel Rick of the Beauregard Parish Sheriff's Office and Officers Kristopher Pruett and Gene Clark of the DeRidder City Police Department (collectively, the "Officer Defendants"). Doc. 50, p. 3-4, ¶ 4; doc. 82, att. 2, p. 1. Referencing the state law[2] doctrine of *respondeat superior*, plaintiffs also name as defendants Beauregard Parish Sheriff Ricky Moses, as the employer of Deputy Rick, and the City of DeRidder, as the employer of Officers Clark and Pruett. *Id.*

### A. *Plaintiffs' Claims*

Alleging that the Officer Defendants used excessive force when they shot and killed Gary Clark, plaintiffs bring civil rights claims under the Fourth and Fourteenth[3] amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983. Doc. 50, p. 1, 7-8. Plaintiffs seek punitive damages under 42 U.S.C. § 1983 against the Officer Defendants in their personal capacities[4] for their alleged willful indifference to Gary Clark's and plaintiffs' federally protected rights. *Id.* at 9.

---

[1] Gary Clark's parents, Easter Johnson and Willis L. Clark, were originally named as plaintiffs in the alternative to the minor children, pending filiation. They were later terminated as plaintiffs, via the Third Amended Complaint. *See* doc. 50, p. 11-12, ¶ 46-47.

[2] Doc. 50, p. 11, ¶ 42 ("Any action related to respondiat [sic] superior is being brought under Louisiana state law claim, not under 42 U.S.C. 1983").

[3] Plaintiffs eliminated their Eighth Amendment claims via the Second Amended Complaint. Doc. 22, p. 10, ¶ 36.

[4] Plaintiffs clarify that punitive damages are sought only against the Officer Defendants and only in their personal capacities. Doc. 50, p. 10, ¶ 37.

Plaintiff Kayla Johnson brings state law wrongful death and survival actions under Louisiana Civil Code articles 2315.1 and 2315.2. Doc. 50, p. 8-12. Plaintiff Hank Clark brings a claim for bystander liability under La. Civil Code art. 2315.6.[5] *Id.* and ¶ 38-39. Plaintiffs allege that the City of DeRidder is "responsible for all state law and constitutional violations" committed by the Officer Defendants [doc. 50, p. 3] and that the Beauregard Parish Sheriff's office is vicariously liable for all delicts of the Officer Defendants under La. Civ. Code art. 2320. Doc. 50, p. 8.

Because plaintiffs' federal civil rights claims under 42 U.S.C. §1983 arise under the laws Constitution and of the United States, this court exercises federal question jurisdiction over this matter. 28 U.S.C. § 1331. Plaintiffs' state law claims are before the court pursuant to supplemental jurisdiction. 28 U.S.C. § 1367. *See* doc. 50, p. 1-2.

The court previously denied defendants' Motions for Judgment on the Pleadings [docs. 51, 53], which sought the application of federal qualified immunity and state law immunity, finding that there were insufficient grounds to grant the motions at the pleadings stage. Doc. 61. Defendants now bring their motion for summary judgment, which attaches the declarations of the Officer Defendants, video recordings from the incident, and video interviews of witnesses Sierra Runyon and Sabrina Stephens. Doc. 82. Plaintiffs oppose, attaching excepts from depositions of witnesses Hank Clark and Sabrina Stephens, Officer Pruett's video interview, and video recording of the incident. Doc. 103.

---

[5] Article 2315.6 provides that the close relatives of an injured person "who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury." La. Civ. Code. art. 2315.6.

### B. *Undisputed Facts*

The following facts are drawn largely from those statements of undisputed fact that were proposed by the defendants and admitted by the plaintiffs; they are also supported by competent summary judgment evidence submitted by the parties, identified above.

On February 27, 2019, Gary Clark was located at 1010 Oak Park Road (the "Residence"). Present in the Residence with him were his brother Hank Clark, Sabrina Stephens, and Sierra Runyun. *Id. at* ¶ 4. At the time, Gary Clark knew of an outstanding felony warrant for his arrest. *Id.* at ¶ 5. Deputy Rick, Officer Pruett, and Officer Clark were dispatched to the Residence that day to arrest Gary Clark in accordance with the arrest warrant. *Id.* at ¶ 7. Another Beauregard Parish Sheriff's Deputy, Christopher McKinney, arrived at the home shortly after Officer Defendants' arrival. *Id.* at ¶ 8. When they arrived at the Residence, the Officer Defendants confirmed with a neighbor that Gary Clark had recently entered the Residence. *Id.* at ¶ 9. Officer Defendants asked Deputy McKinney to cover the rear of the house because Gary Clark was a known flight risk. *Id.* at ¶ 10. Officer Pruett knocked on the door of the Residence, announced he was with the DeRidder Police Department, and stated that he would obtain a search warrant if not allowed to enter the home. *Id.* at ¶ 11. Sierra Runyan, who lived at the Residence, opened the door and allowed Officer Defendants entry. *Id.* at ¶ 12. Sierra Runyan stated that Gary Clark was inside, and she directed Officer Pruett to the back bedroom. *Id.*

As Officer Defendants proceeded to the back bedroom, Officer Pruett loudly announced he was with the DeRidder Police Department and that anyone in the back bedroom should make themselves known. *Id.* at ¶ 13. He received no response. *Id.* When Officer Defendants reached the bedroom door, and prior to opening that door, Officer Pruett yelled that he knew Gary Clark

was in the room, and that Gary Clark should show his hands. *Id.* at ¶ 14. Again, he received no response. *Id.*

From his position outside the window, Deputy McKinney observed Gary Clark attempt to exit the home through the bedroom window, and he saw that Gary Clark was holding a gun. *Id.* at ¶ 16. Upon seeing the gun, McKinney unholstered his taser, which caused it to begin audio and video recording. *Id.* When he saw Deputy McKinney, Gary Clark withdrew from the window and returned to the bedroom. *Id.*

In the first frames of the first taser video, a young man's head and shoulders protrude from a window in a brick wall. His left foot is on the windowsill, and in his left hand, he is holding a gun by the butt, with the barrel facing away from the camera. As he withdraws from the window and turns to face the interior of the room, he appears to transfer the gun from his left hand to his right hand, and then steps out of view of the camera. Doc. 82, ex. D-1 (manual attachment). A voice is heard yelling, "get on the floor now." *Id.*

### C. *Nature of the Dispute.*

While there is no meaningful dispute that Gary Clark had possession of the handgun before the officers entered the bedroom,[6] plaintiffs argue that there is a meaningful factual dispute as to what the Officer Defendants encountered when they entered the bedroom, such that the reasonableness of their actions cannot be established by the evidence now before the court.

Plaintiffs admit that when Officer Pruett pushed the door open and entered the room, he saw Gary Clark standing near the bedroom window. Doc. 103, att. 41, ¶ 15. Hank Clark and

---

[6] Plaintiffs' complaint includes an allegation that "Gary Clark attempted to escape the officers by exiting the bedroom window while carrying a pistol, butt first, in his left hand." Doc. 50, p. 4 ¶ 10. Sierra Runyun observed Gary Clark in possession of a gun on February 27, 2019, while he was located in the Residence. Doc. 103, att. 41, ¶ 6.

Sabrina Stephens were also in the room, in a bed that was located against one of the bedroom walls. *Id.*

Based on the testimony of Hank Clark and Sabrina Stephens, who testified that they never saw the gun in Gary Clark's possession, plaintiffs dispute that Gary Clark had the gun in his possession when the Officer Defendants entered the room.[7] In his declaration and video interview, Officer Pruett stated that he could not see the gun when he first entered the room, but that he saw the gun in Gary Clark's right hand after taking an additional step into the room.[8] Plaintiffs admit that Officer Pruett yelled, "Drop the gun!" or otherwise yelled that Gary Clark had a gun.[9] Plaintiffs admit that Deputy Rick and Officer Clark heard Officer Pruett's verbal warning about the presence of the gun. Doc. 103, att. 41, ¶ 18-19. Officer Pruett fired his service weapon a single time, striking Gary Clark in the right arm or wrist. *Id.* at ¶ 20. At approximately the same time, Deputy McKinney tased Gary Clark through the bedroom window, causing the taser to begin recording again. *Id.* Gary Clark fell to the floor. *Id.* at ¶ 21.

By the time Gary Clark fell to the floor, plaintiffs acknowledge that his gun was also on the floor, either because it fell with him or because he had tossed it there. The second taser video, marked D-2, shows Gary Clark on the floor struggling in apparent pain, with blood on his right

---

[7] Hank Clark testified that he never saw a gun in his brother's hand when he was "opening the curtain and closing the curtain" and that the only thing he ever saw in his brother's hand was a cell phone. Clark Depo. 32:21 – 33:9. (doc. 103, att. 31)(exhibit 27). He also testified that he heard his brother throw the gun on the ground. *Id.*, 87:9-25 (doc. 93, att. 38, p. 9)(exhibit 34). Sabrina Stephens testified that she never saw a gun in Gary's hand that day, never saw anything in his hands, including a cell phone, and never told anyone, including the state police, that Gary had a gun in his hands that day. Stephens Depo. 57:15-19, 59:2-8, 72:14-17(doc. 103, att. 30, 27, 29)(exhibits 26, 23, 25). She also told the state police in her video interview on the day of the incident that Gary Clark had "a gun in his hand the whole time." Stephens Interview, doc. 82, att. 8, 7:5-9:15 (2/27/19). Because this is a summary judgment, the court makes no credibility determination and does not weigh evidence, but the court notes the inconsistencies for the record.

[8] Doc. 82, att. 4 (Declaration of Kristopher Pruett); doc. 103, att. 4, ex. 2 (manual attachment, video Interview of Officer Kristoper Pruett at 8:00 – 8:41).

[9] Doc. 103, att. 41, ¶ 18. Stephens Depo. 89:1-5(doc. 103, att. 12, p. 2)(exhibit 8). *See also* 2/27/19 Runyon Interview at 5:58 doc. 82, ex. F-1(manual attachment) ("they were telling him to get on the floor and drop the gun.").

wrist. He reaches across his body with his left hand to grasp something and pull it toward his midsection, and the sound of several gunshots immediately follow. A voice reports, "shots fired." Doc. 82, ex. D-2 (manual attachment).

In their declarations, Officer Defendants state that the gun was visible to them on the floor, and that Gary Clark had reached for the gun with his left hand when they discharged their weapons.[10] Each of the Officer Defendants also declares that he was concerned for his own and his fellow officers' safety when Gary Clark reached for his gun.[11] Acting on those fears, each discharged his weapon, firing a total of 14 shots, 10 of which hit Gary Clark. Although plaintiffs speculate that Gary Clark was—or could have been—reaching for his cell phone [doc. 103, p. 4], this speculation is unsupported by testimony or other competent evidence.[12]

## II.
### APPLICABLE LAW

#### A. *Summary Judgment Standard*

A court shall grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). A genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v.*

---

[10] Doc. 82, att. 3, p. 3, ¶ 17-18 (Deputy Rick declaration); doc. 82, att. 4, ¶ 9 (Officer Pruett declaration); doc. 82, att. 5, p. 2, ¶ 8 (officer Clark declaration).

[11] *Id.*

[12] Based on the testimony of Hank Clark and Sabrina Stephens, plaintiffs contend that Gary Clark was never in possession of the firearm after he tossed it to the floor. Doc. 103, att. 41, ¶ 23. Even taking that testimony as true, on the evidence currently before the court, no witness ever stated or testified that he or she observed Gary Clark reach for a cell phone while he was on the floor after being shot and tased, and no witness directly contradicts the Defendant Officers' statements that Gary Clark reached for his gun.

*Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Tubacex*, 45 F.3d at 954.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986) (quotations omitted). "[A] plaintiff cannot establish a genuine issue of material fact by resting on the mere allegations of its pleadings." *Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984). Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, [ . . .] or is not significantly probative, [ . . . ] summary judgment may be granted." *Anderson*, 106 S. Ct. at 2511 (citations omitted).

The court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2110 (2000). "However, 'summary judgment is appropriate unless [a] plaintiff can produce *significant evidence* demonstrating the existence of a genuine fact issue.'" *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (citation omitted) (brackets and emphasis original).

"Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Poole v. City of Shreveport*, F.3d 624, 627 (5th Cir. 2012) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)). "A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'" *Id.*

### B. *Claims Under by 42 U.S.C. § 1983 – Excessive Force and Punitive Damages*

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Here, plaintiffs bring excessive force claims that invoke the protection provided by the Fourth Amendment of the United States Constitution against "unreasonable seizure" and should be analyzed under that standard. *Graham v. Connor*, 109 S. Ct. 1865, 1871 (1989). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

Fourth Amendment jurisprudence has long recognized "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 109 S. Ct. at 1872. In excessive-force claims, the reasonableness of an officer's conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 1872. Reasonableness must be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Our inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* We are to consider only facts that were knowable to the defendant officers. *White v. Pauly*, 137 S. Ct. 548, 550 (2017). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

evolving—about the amount of force that is necessary in a particular situation." *Graham,* 109 S. Ct. at 1872.

### 1. Qualified Immunity as to § 1983 claims

Defendants assert that they are entitled to qualified immunity as to plaintiff's claims arising under 42 U.S.C. § 1983. Doc. 82, att. 1, p. 27. "The Supreme Court over several years has developed protection from civil liability for persons going about their tasks as government workers in the form of immunity; not the absolute immunity enjoyed by prosecutors and judges, but a qualified immunity." *Cole v. Carson*, 935 F.3d 444, 446 (5th Cir. 2019), *as revised* (Aug. 21, 2019). The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308, (2015) (citing *Pearson v. Callahan*, 129 S. Ct. 808 (2009)). It is "an '*immunity from suit* rather than a mere defense to liability.'" *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002) (emphasis in original) (quoting *Mitchell v. Forsyth*, 105 S. Ct. 2806, 2815 (1985)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 106 S. Ct. 1092, 1093 (1986)). In the context of excessive force, "qualified immunity protects actions in the "hazy border between excessive and acceptable force.'" *Mullenix*, 136 S. Ct. at 312 (quoting *Brosseau v. Haugen*, 125 S. Ct. 596, 600 (2004))(internal quotations omitted). The doctrine protects at the earliest stage of litigation at which the defense's application is determinable. *Cole v. Carson*, 935 F.3d 444, 446 (5th Cir. 2019), *as revised* (Aug. 21, 2019).

In the summary judgment context, a government official need only properly assert the defense of qualified immunity, then the burden shifts to the plaintiff to negate the defense. *Poole*

*v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).  To overcome the defense at the summary judgment stage, the plaintiff must marshal sufficient evidence to raise a genuine dispute of material fact that (1) "the officers' conduct violated an actual constitutional right," and (2) the "officers' 'actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'"  *Id.* (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)) (cleaned up). The court may choose which of the two prongs to address first. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016) (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

A plaintiff satisfies the second prong by establishing that "genuine issues of material fact exist regarding the reasonableness of the official's conduct." *King,* 821 F.3d at 654 (quoting *Gates v. Tex. Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)).  As the Fifth Circuit has recently noted:

> In excessive force cases, "[t]he second prong of the [qualified immunity] analysis 'is [itself] better understood as [encompassing] two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'"

*Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021)(quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (alteration original).  "Whether an official's conduct was objectively reasonable [in light of the law that was clearly established at the time of the disputed action] is a question of law for the court, not a matter of fact for the jury." *Id.* (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010))(alteration original).  "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions

were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Where, as here, multiple defendants have been accused of activity that would be protected by qualified immunity, each defendant's actions should be considered on an individual basis, to the extent possible. *Meadours v. Ermel,* 483 F.3d 417, 421-22 (5th Cir. 2007).

## III.
### ANALYSIS

Because the court exercises federal question jurisdiction, we begin by examining plaintiff's claims arising under 42 U.S.C. § 1983 and defendant's federal qualified immunity defense. We first assess whether qualified immunity applies before assessing the merits of the underlying claims for civil rights violation. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("We address only the qualified immunity question, not whether there was a Fourth Amendment violation in the first place [ . . . ]").

### A. *Defendants' Motion for Summary Judgment Based Upon Qualified Immunity*

Because the burden of proof for overcoming a qualified immunity defense at the summary judgment stage rests on the plaintiffs, plaintiffs bear the burden of showing that the Officer Defendants violated one of Gary Clark's constitutional rights and that their actions were unreasonable in light of clearly established law at the time of the conduct in question. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

Turning first to the question of the unreasonableness of the officers' conduct, Defendants contend that that they are entitled to a summary judgment determination of qualified immunity because the undisputed facts show that the Officer Defendants acted in an objectively reasonable fashion when they shot Gary Clark.[13] Defendants argue that it was objectively reasonable for each

---

[13] The court previously determined that it would be inappropriate to grant qualified immunity at the pleadings stage because of the number of rounds with which Gary Clark was struck. Doc. 61, p. 5.

of the Officer Defendants to perceive a threat to his own life when confronted by someone who had been shot in the wrist and tased, but who still had the ability to reach across himself and retrieve an a firearm from the floor. Doc. 82, att. 1, p. 43.

Plaintiffs argue that genuine issues of material fact preclude the issuance of summary judgment. Specifically, plaintiffs argue that Officer Defendants could not have been in reasonable fear of harm when they used lethal force against Gary Clark. Plaintiffs reason that, because Gary Clark had tossed his gun to the floor before officers entered the bedroom, then Officer Pruett could not have been reasonably afraid when he first shot Gary Clark in the wrist. Plaintiffs point to the fact that Deputy Rick repeatedly ordered Gary Clark to show his hands as evidence that he had not yet seen Gary Clark's hands, and therefore could not be in reasonable fear of what they held.[14] Plaintiffs further argue that after Gary Clark had been shot in the wrist and tased, Officer Defendants could not have been in reasonable fear precisely because Gary Clark had been shot and tased, and therefore subdued.

Viewing the evidence in the light most favorable to the non-movant, the court finds that there are no genuine issues of material fact regarding the reasonableness of the Officer Defendants' conduct during the incident. Plaintiffs admit that Officer Defendants saw the gun on the floor after Gary Clark had been shot in the wrist and tased. Doc. 103, att. 41, ¶ 22. Video D-2 evidence shows Gary Clark struggling in apparent pain from the taser and initial gunshot, but then decisively reaching across his body with his left hand and pulling the object he has retrieved toward his midsection.[15] At this point, the Officer Defendants were confronting a suspect who had attempted

---

[14] Plaintiffs do not dispute that Deputy Rick repeatedly ordered Gary Clark to show his hands. Doc. 103, att. 41, ¶ 18. But plaintiffs suggest that, because he yelled for Gary Clark to show his hands, Deputy Rick must not have been able to see Gary Clark's hands, and therefore "is not reasonable to believe that the officer feared for his life not having seen a firearm in Gary Clark's possession." *Id.*

[15] The video does not clearly show what the object is.

to evade arrest, who was known to be in the proximity of a gun on the floor, against whom they had already used non-lethal force, and who has reached across himself to grab something on the floor.  A reasonable officer in these circumstances could have easily believed that Gary Clark had retrieved the gun, and a reasonable officer would therefore be concerned for the immediate safety of himself and the others in the room and could have reasonably judged lethal force to be necessary.  The United States Court of Appeals, Fifth Circuit, "has repeatedly found that it is objectively reasonable for an officer to use deadly force even if he merely believes—albeit reasonably—that the suspect is reaching for a weapon."  *Orr v. Copeland*, 844 F.3d 484, 494 (5th Cir. 2016)(collecting cases).  In fact, Officer Defendants each declared that they believed Gary Clark was reaching for his gun.  Absent evidence to the contrary, the court may accept these declarations as true.  *Id.*  In the split second that followed Gary Clark's reach, because a reasonable officer could have determined that Gary Clark was preparing to use his weapon against someone in the room, the Officer Defendants' use of lethal force was objectively reasonable.  It is therefore recommended that the Officer Defendants are entitled to qualified immunity, and defendants' motion for summary judgment on the basis of qualified immunity should be granted.

### B.  Monell *Claims against municipal defendants under 42 U.S.C. § 1983*

Under *Monell v. Dep't of Soc. Servs. of City of New York*, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory" merely "because it employs a tortfeasor." 98 S. Ct. 2018, 2036 (1978).  But a municipality may be held liable under 42 U.S.C. § 1983 when its employees or agents implement what may fairly be said to be an official government policy or custom, and in so doing engage in tortious acts.  *Id.* at 2037-38.

It is unclear whether plaintiffs intended to bring *Monell* claims as to either the City of DeRidder or Ricky Moses, Sheriff of Beauregard Parish.  Out of an abundance of caution the

Motion for Summary Judgment addresses possible *Monell* claims against the City of DeRidder, noting ambiguity in the Third Amended Complaint. In response, the plaintiffs' opposition brief states that "Plaintiffs have not asserted a claim to recovery for the City of Deridder under 42 U.S.C. 1983, as suggested by Defendants." Doc. 97, att. 7, p. 23. But the opposition brief also argues that qualified immunity is only available to the officers in their personal or individual capacities, so that "to the extent the Defendants' motion is granted only on the basis of qualified immunity, the City would not be entitled to summary judgment in its favor." *Id.*

To the extent that plaintiffs intend to bring claims against Sheriff Moses or the City of DeRidder under 42 U.S.C. § 1983, those claims do not survive summary judgment. "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Neither the plaintiffs' complaints nor the opposition briefing make any effort to identify a municipal policy that may have been the moving force behind Officer Defendants' actions. Finding, therefore, that plaintiffs have not made a *prima facie* showing of the elements that would give rise to municipal liability as to either the City of DeRidder or Sheriff Ricky Moses, we recommend that summary judgment be granted as to any claims against those defendants arising under 42 U.S.C. § 1983 and *Monell*, and that such claims be dismissed with prejudice.

### C. *Louisiana State Law Claims*

Plaintiff's complaint also alleges that defendants are liable for damages under Louisiana state law, and defendants raise state law immunity as a defense. Those claims and defenses remain unresolved by the foregoing analysis. However, plaintiff sought jurisdiction in this court pursuant

to federal question jurisdiction, 28 U.S.C. § 1331, and this court exercises jurisdiction over the state law claims purely on the basis of supplemental jurisdiction under 28 U.S.C. § 1367.

Since we have found it proper to recommend summary judgment on plaintiff's 42 U.S.C. § 1983 claims, after dismissal of such, no federal question would remain before this court. "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). Accordingly, if the district court adopts the recommendation as to the federal claims, plaintiffs' state law claims should be dismissed without prejudice for lack of subject matter jurisdiction. *See Id.*

## IV.
### CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Joint Motion for Summary Judgment filed by defendants Sheriff Ricky Moses, Deputy Daniel Rick, Officer Kristopher Pruett, Officer Gene Clark, and the City of DeRidder [doc. 82] be **GRANTED** and that plaintiffs' federal claims alleging constitutional and civil rights violations pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiffs' remaining claims, all of which sound in state law, be **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District

Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n,* 79 F.3d 1415, 1429–30 (5th Cir.1996).

THUS DONE AND SIGNED in Chambers this 1st day of November, 2023.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE